IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD F. BASS, | : |
| Plaintiff, | : |
| v. | : Civ. No. 13-249-LPS |
| CARL DANBERG, et al., | : |
| Defendants. | : |

Donald F. Bass, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

July 29, 2013
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

**I.     INTRODUCTION**

Plaintiff Donald F. Bass ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] Plaintiff, an inmate, is housed at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A.

**II.    BACKGROUND**

According to the Complaint, on December 13, 2012, Defendants Sergeant George Gill ("Gill") and Officer Rea Green ("Green") were conducting recreation. Plaintiff wished to recreate in the inside yard #1, but was told his options were either outdoor recreation or to go to the shower. It was cold outside, and Plaintiff was irritated that he was required to have outdoor recreation. Plaintiff contends that Gill manipulated matters to justify placing him in outdoor recreation. While Plaintiff was outdoors, he saw a handcuff key on the ground and held it up for the officers to see. Then he placed it on the windowsill. Plaintiff indicated that he wished to speak to a lieutenant, but his request was ignored. A few minutes later the Quick Response Team ("QRT"), composed of Defendants C/O Fitzgerald ("Fitzgerald"), C/O Bradl ("Bradl"), C/O Cassidy ("Cassidy"), and two others, arrived. The QRT was briefed by Defendant Lt. Drace ("Drace").

---

[1] Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1

Sergeants Wallace ("Wallace) and ("Madigan'), both Defendants, and Drace were on the outside of the outdoor recreation yard. Drace sent the QRT into the yard and the QRT took Plaintiff to the ground. Plaintiff states that, during the take-down, the QRT members did not throw any punches. The QRT handcuffed Plaintiff's arms and shackled his legs. Plaintiff alleges that while he was restrained, and on the ground, Drace placed his hands over Plaintiff's nose and mouth to prevent him from breathing. A hoody was placed over Plaintiff's head. Drace let go of Plaintiff's nose, but held onto his mouth and sprayed a chemical agent directly into Plaintiff's left nostril. Plaintiff was unable to breath and, as soon as he caught his breath, Drace administered another targeted pepper spray to Plaintiff's face. Plaintiff alleges that at no time did any of the correctional officers who were present attempt to stop the attack.

Plaintiff was seen by a nurse, who checked his vital signs. He asked the nurse to clean his face but Wallace would not allow it and told Plaintiff that there was a sink in his cell. Plaintiff alleges that none of the correctional officers attempted to secure medical treatment for his exposure to the chemical agent.

Next, the QRT escorted Plaintiff to a cell where he was ordered to lay face down on the bed. The QRT members knelt on Plaintiff's back and shoulders while they removed the handcuffs and shackles. Later, Drace gave Plaintiff a disciplinary report for demonstrations, disorderly or threatening behavior, disrespect, and failing to obey an order. Plaintiff alleges that the report, authored by Gill, has falsified portions.

Plaintiff awakened in severe pain on December 14, 2012. When the nurse arrived to dispense medication, Plaintiff explained his symptoms and was told by her that he was required to submit a sick call slip before she could see him. Plaintiff sought sick call slips and grievance

forms for five days from correctional officers, but to no avail. On one occasion, he asked Defendant Hicks ("Hicks") for a sick call slip and grievance form. Hicks asked Plaintiff if he had a pen and when Plaintiff answered "no, can I use yours," Hicks replied that he did not have one and that if Plaintiff did not have a pen, he did not need a sick call slip or grievance. Plaintiff was finally provided with a grievance and sick call slip on December 19, 2013. He submitted a grievance that day and it was returned to him as non-grievable with advice to write to his unit commander. Plaintiff appealed to the unit commander but received no response. On February 13, 2013, he wrote to Defendant Warden Perry Phelps ("Warden Phelps").

Plaintiff expressly raises claims of excessive force, deliberate indifference to medical needs, and the deprivation of the right to indoor recreation. In addition, it is apparent from his allegations that he alleges a failure to protect from harm. Plaintiff seeks compensatory and punitive damages.

### III. LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Plaintiff names as Defendants former Delaware Department of Correction Commissioner Carl Danberg ("Danberg") and Warden Phelps. It appears that Plaintiff names these two Defendants based on their supervisory positions. There are no allegations directed towards Danberg. With respect to Warden Phelps, Plaintiff alleges that he wrote to Phelps regarding the December 2012 incident.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved . . . ." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal quotation marks and citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to establish liability for deprivation

of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 556 U.S. at 677; *Rode*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *See id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which supervisors can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the

supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[2] *See Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies under which the subordinates had no discretion but to act in a fashion which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the

---

[2] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample*, 885 F.2d at 1117-18; *see also Iqbal*, 556 U.S. at 677-87; *City of Canton v. Harris*, 489 U.S. 378 (1989).

Plaintiff provides no facts describing how the foregoing Defendants allegedly violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies leaving subordinates no discretion but to act in a fashion which actually produced the alleged deprivation. In short, Plaintiff has alleged no facts to support personal involvement by Danberg or Warden Phelps. Accordingly, the Court will dismiss as frivolous all claims against Danberg and Warden Phelps pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### B. Recreation

Plaintiff alleges that he was deprived of a state-created liberty interest to indoor recreation. The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) ("Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation.").

However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199. Hence, a constitutional violation will occur only when the deprivation of

8

exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Here, Plaintiff does not allege that he was deprived of exercise for prolonged periods of time. Nor does he allege tangible physical harm resulting from lack of exercise. He alleges only that he was denied indoor recreation.

## V. **CONCLUSION**

For the above reasons, the Court will dismiss all claims against Defendants Danberg and Warden Phelps as well as the recreation claim. Plaintiff will be allowed to proceed with excessive force, failure to protect, and medical needs against the remaining defendants.

An appropriate Order follows.